UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION** at **LONDON**

CASSIE ANN ESCANDON,  )
                       )
    Plaintiff,         )    Civil Case No.
                       )    6:18-cv-186-JMH
V.                     )
                       )
ANDREW SAUL, Commissioner )    **MEMORANDUM OPINION**
of Social Security,[1]  )        **AND ORDER**
                       )
    Defendant.         )

** ** ** ** **

Plaintiff Cassie Ann Escandon brings this action under 42 U.S.C. § 405(g) to challenge Defendant Commissioner's final decision denying Plaintiff's applications for Social Security Disability Insurance Benefits and Supplemental Security Income. [DE 2]. The specific matters currently before the Court include Plaintiff's Motion for Summary Judgment [DE 11] and Defendant's Motion for Summary Judgment [DE 13]. Both matters are now ripe for decision, and for the reasons discussed below, Plaintiff's Motion for Summary Judgment [DE 11] will be denied, and Defendant's Motion for Summary Judgment [DE 13] will be granted. Accordingly, the Court will affirm the Commissioner's decision, as it is supported by substantial evidence.

---

[1] On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social Security. When this action was filed, Nancy Berryhill was serving as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2015, Plaintiff filed both a Title II application for disability insurance benefits and a Title XVI application for supplemental security income, alleging her disability began on September 10, 2013. [Tr. 92-93, 220-26, 227-35; 250]. At the time of Plaintiff's alleged disability onset date, she was 48 years old. [Tr. 66]. Plaintiff completed the ninth (9th) grade, and her past relevant work was as a gas station attendant and hotel clerk/housekeeper. [Tr. 251]. In Plaintiff's application materials, she initially alleged she was unable to work due to chronic obstructive pulmonary disease ("COPD"), a heart problem, diabetes, high blood pressure, high cholesterol, arthritis, degenerative disc disease in the back and neck, numbness in arms and legs, bad nerves, and neuropathy. [Tr. 66, 79, 250].

On March 16, 2013, Plaintiff was diagnosed with right shoulder bursitis. [Tr. 680]. On August 28, 2013, Plaintiff was admitted to the hospital for COPD exacerbation and bilateral pneumonia. [Tr. 384-87]. Plaintiff's November 20, 2013 pulmonary function examination found mild COPD. [Tr. 442]. Plaintiff's chest x-rays from July 5, 2014 to June 10, 2015 showed findings compatible with COPD. [Tr. 477, 480, 493, 494, 1001-02]. On December 5, 2016, Plaintiff was again diagnosed with COPD exacerbation. [Tr. 1186].

On November 29, 2014, Plaintiff was admitted to the hospital and initially diagnosed with chest pain with typical and atypical

features, uncontrolled hypertension, chronic pain, moderately controlled diabetes, and depression. [Tr. 445-47]. On November 30, 2014, after adjusting Plaintiff's medications, Plaintiff was discharged and diagnosed with chest pain, controlled hypertension, and controlled diabetes. [Tr. 445-47]. Both May 12, 2014 and March 19, 2015, x-rays of Plaintiff's lumbar spine showed a mild degree of diffuse lumbar spondylosis, which Plaintiff's orthopedist, Kirpal S. Sidhu, M.D., treated with medication. [Tr. 485, 490, 1091-96, 1097, 1098-1104].

In addition to Plaintiff's recurring issues with her shoulder, COPD, diabetes, and back, Plaintiff continued seeking treatment related to her coronary artery disease, which included the insertion of stents in both July 2014 and July 2016. [Tr. 945, 1296-98]. Plaintiff's April 2015, echocardiograph report showed there was a "normal left ventricular size and function with no segmental wall motion abnormalities" and "[e]jection fraction [was] estimated at 65%." [Tr. 632-33]. Plaintiff's subsequent July 2016 echocardiograph report showed "[n]ormal left ventricular size and function with mild anteroseptol hypokinesia," "[e]jection fraction estimated at :60%," and "[g]rade I diastolic dysfunction." [Tr. 1294]. As of February 11, 2017, Plaintiff's cardiologist, Srinivasa Appakondu, M.D., was continuing to treat Plaintiff's heart conditions medically, suspected Plaintiff's "bilateral lower extremity leg pain [was] secondary to venous

insufficiency," and ordered a venous ultrasound, the results of which are not found in the record. [Tr. 1274].

Plaintiff also sought treatment related to her mental health. However, on May 8, 2014, Plaintiff reported that since October 2013, the month after her alleged onset date, she had not been on any medication for depression or anxiety. At that time, complaining of "irritability and short temper" and describing her mood as "'not good,'" she expressed an interest in being on medication again and claimed her symptoms had worsened since October 2013. [Tr. 959-60].

On January 17, 2016, state agency psychological consultant Lea Perritt, Ph.D., opined that Plaintiff's affective and anxiety disorders were not severe, and Plaintiff's restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace were all mild. [Tr. 73-74]. On April 25, 2016, state agency psychological consultant Dan Vandivier, Ph.D., opined that Plaintiff's affective and anxiety disorders were not severe, but while Dr. Vandivier found Plaintiff's restriction of activities of daily living to be mild, he also found Plaintiff to have moderate difficulties in maintaining social functioning and concentration, persistence, or pace. [Tr. 102-03]. Dr. Vandivier further opined Plaintiff was not significantly limited at doing the following: understanding, remembering, and carrying out very

short and simple instructions; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or in proximity to others without being distracted by them; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; being aware of normal hazards and taking appropriate precautions; and traveling to an unfamiliar place or using public transportation. [Tr. 106-08, 124-26]. However, Dr. Vandivier found Plaintiff moderately limited at doing the following: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; interacting appropriately with the general public; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others. [Tr. 106-08; 124-26]. Despite reporting a depressed and anxious mood and auditory hallucinations, such as hearing music, at times, Plaintiff's medical records, from February 9, 2016 to October 26, 2016, show she had a clear and coherent thought process, no hallucinations, no delusions, no abnormal thought

content, and no suicidal or homicidal ideation. [Tr. 1078-89, 1105-06, 1109-11, 1113-19, 1121-23, 1124-44].

On December 28, 2015, at the behest of the Kentucky Disability Determination Services, William R. Rigby, Ph.D., conducted a consultative examination of Plaintiff. [Tr. 1042-46]. Dr. Rigby noted the following about Plaintiff: she "drove herself to the exam;" her gait was normal; she "became very uncomfortable and anxious during the session and her neck turned a bright red;" her mood appeared "mildly depressed;" she had "[i]ntact concentration and attention;" and she had "intact short-term and long-term memory." [Tr. 1043-44]. Dr. Rigby diagnosed Plaintiff with posttraumatic stress disorder, depressive disorder, diabetes, cardiac problems, degenerative disc disease, and "COPD by claimant report" and assessed her to have a Global Assessment of Functioning ("GAF") score of sixty (60), indicating Plaintiff's symptoms were moderate. [Tr. 1046]; *see also* [Tr. 36]. Dr. Rigby opined, "The claimant has mild impairment to understand, retain, and follow simple instructions and mild impairment to sustain concentration and persistence to complete tasks in normal time." [Tr. 1046]. Dr. Rigby further opined, "The claimant has marked impairment to maintain social interactions with supervisors, friends, and the public and marked impairment to adapt and respond to the pressures of normal day-to-day work activity." [Tr. 1046].

On May 18, 2016, Donna Sadler, M.D., a state agency medical consultant, provided an opinion on Plaintiff's Residual Functional Capacity ("RFC"). [Tr. 104-06, 122-24]. Dr. Sadler found Plaintiff had the following exertional limitations: occasionally lift or carry twenty (20) pounds; frequently lift or carry ten (10) pounds; and sit, stand, or walk six (6) hours in an eight (8) hour workday. [Tr. 104, 122]. Dr. Sadler also found Plaintiff could occasionally climb ladders, ropes, or scaffolds and frequently stoop and crawl. [Tr. 105, 123]. Dr. Sadler further found Plaintiff should avoid all exposure to hazards, such as machinery and heights, and avoid concentrated exposure to extreme cold or heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. [Tr. 105, 123].

Plaintiff's disability claims were denied initially and on reconsideration. [Tr. 92, 93, 130, 131]. On June 29, 2017, the ALJ held a hearing. [Tr. 46-65]. At the time of the hearing [Tr. 46-65], Plaintiff was fifty-two (52) years old. As will be discussed further herein, Plaintiff testified at the hearing. [Tr. 50-59].

In addition to Plaintiff, vocational expert ("VE") Betty Hale testified. [Tr. 61-64]. VE Hale testified that a hypothetical person of Plaintiff's age, with Plaintiff's education, work experience, and limitations, could not perform Plaintiff's past relevant work. [Tr. 62-63]. However, VE Hale testified that a person such as Plaintiff could perform unskilled work as a small products assembler, inspector/packager, grader, or sorter. [Tr.

63]. VE Hale further testified that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), where applicable, as the DOT does not contain sit/stand restrictions. [Tr. 64].

On September 14, 2017, an Administrative Law Judge ("ALJ") reviewed the evidence of record and denied Plaintiff's application. [Tr. 26-45]. In denying Plaintiff's application, the ALJ found Plaintiff had the following severe impairments: "obesity, degenerative disc disease, neuropathy, [COPD] with tobacco abuse, coronary artery disease with history of stenting, history right shoulder bursitis, anxiety, and depression." [Tr. 32 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c))]. Despite the ALJ finding Plaintiff had multiple severe impairments, the ALJ also found Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with the following physical limitations: occasional climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; occasional stooping, kneeling, crouching, and crawling; occasional reaching overhead with right upper extremity; occasional exposure to extreme heat, extreme cold, humidity, and pulmonary irritants; and no exposure to unprotected heights or dangerous moving machinery. [Tr. 34]. The ALJ found Plaintiff's mental limitations to be as follows: can understand and remember simple instructions; can sustain the attention and concentration necessary to complete simple tasks

8

with regular breaks every two hours; can occasionally interact with supervisors and coworkers; cannot interact with the public; and can adapt to routine work conditions and occasional workplace changes that are gradually introduced. [Tr. 34].

The ALJ, accepting the vocational expert's testimony, found Plaintiff was unable to perform her past relevant work as a gas station attendant, which is classified as light but performed at medium, and hotel housekeeper, which is classified as light but performed at heavy. [Tr. 38]. However, again accepting the vocational expert's testimony, the ALJ determined there are other jobs Plaintiff could perform in the national economy, such as a small products assembler and inspector and hand packager, which are classified as light and unskilled, and Plaintiff was, therefore, found to not be disabled. [Tr. 39]. On May 9, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's September 14, 2017 decision [Tr. 26-45], which rendered the decision [Tr. 26-45] final. [Tr. 1-6].

Having exhausted her administrative remedies, on July 5, 2018, pursuant to 42 U.S.C. § 405(g), Plaintiff sought review through an action in this Court. [DE 2]. On September 25, 2018, Defendant filed an Answer [DE 9] contending, "Paragraph 6 of Plaintiff's Complaint states legal conclusions to which no responsive pleading is required," and "Plaintiff's Complaint represents a Prayer for Relief to which no responsive pleading is

required." [DE 9, at 2]. To the extent that the Court deems a response to Paragraph 6 of the Complaint [DE 2] necessary or the Prayer for Relief is deemed to allege facts to which a response is required, "the Defendant denies the allegations." *Id.* Pursuant to the Court's September 26, 2018, Standing Scheduling Order [DE 10], Plaintiff was directed to "move for summary judgment or judgment on the pleadings within sixty (60) days." [DE 10, at 2].

As will be discussed further herein, on November 20, 2018, Plaintiff filed the present Motion for Summary Judgment [DE 11], with an accompanying Memorandum in Support [DE 11-1], arguing, in summary, that the ALJ erred by failing to support his finding that Plaintiff was not disabled with substantial evidence and by failing to properly evaluate Plaintiff's subjective complaints of pain. [DE 11-1, at 2]. Responding to Plaintiff's Motion for Summary Judgment [DE 11], on December 20, 2018, Defendant filed a Motion for Summary Judgment [DE 13] contending the ALJ's decision [Tr. 26-45] should be affirmed because the ALJ's decision [Tr. 26-45] was supported by substantial evidence, and Plaintiff's subjective complaints were not supported by the record. [DE 13, at 8-13].

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

10

record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

"In determining whether the Secretary's factual findings are supported by substantial evidence, [the Court] must examine the evidence in the record 'taken as a whole . . . .'" *Wyatt v.*

*Secretary of Health and Human Services,* 974 F.2d 680, 683 (6th Cir. 1992) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)). Additionally, the Court "'must take into account whatever in the record fairly detracts from its weight.'" *Wyatt,* 974 F.3d at 683 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir. 1978). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). "If the Secretary's findings are supported by substantial evidence, then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Secretary of Health & Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

## III. DISCUSSION

Under the Social Security Act, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In summary, the five-step sequential evaluation process is as follows:

The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. § 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." § 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. § 416.920(d). If the claimant does not satisfy one of the listings, the [fourth step] is to determine whether the claimant's impairment prevents him from performing his past relevant work. § 416.920(e). If it does not, the claimant is found not disabled. [At the fifth step,] [i]f the impairment prevents a return to former work, the claimant's residual functional capacity must be determined, *id.,* and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. § 416.920(f); *see also* Subpart P, Appendix 2, Tables 1-3.

*Williamson v. Secretary of Health and Human Services,* 796 F.2d 146, 149 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

The claimant "bear[s] the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Id.*

Since the Parties' cross Motions for Summary Judgment [DE 11;

DE 13] concern the same facts, the Court will consider the Parties'
Motions [DE 11; DE 13] together. The issues presently before the
Court are whether the ALJ erred by failing to support his finding
that Plaintiff was not disabled with substantial evidence or by
failing to properly evaluate Plaintiff's subjective complaints of
pain. [DE 11-1, at 2].

### A. WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Federal regulations provide that the Social Security
Administration ("SSA") makes disability determinations based on
"all the evidence in [the] case record." 20 C.F.R. §
404.1520(a)(3). Furthermore, the SSA is to "always consider the
medical opinions in [the] case record together with the rest of
the relevant evidence [they] receive." 20 C.F.R. § 404.1527(b).
"In evaluating the intensity and persistence of [a claimant's]
symptoms, [the SSA] consider[s] all of the available evidence from
[a claimant's] medical sources and nonmedical sources about how [a
claimant's] symptoms affect [them]." 20 C.F.R. § 404.1529(c)(1).

Regarding how much weight the SSA gives medical opinions,
treating sources' medical opinions are given controlling weight
"on the issue(s) of the nature and severity of your impairment(s)"
unless the treating sources' medical opinions are not "well-
supported by medically acceptable clinical and laboratory
diagnostic techniques and [are] not [consistent] with the other

substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2).[2] When a treating source's opinion is not given controlling weight, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). "Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the [previously mentioned] factors in deciding the weight we give to *any* medical opinion." 20 C.F.R. § 404.1527(c) (emphasis added). Even when the treating source's opinion is not entitled to controlling weight, there remains a rebuttable presumption "that the opinion of a treating physician is entitled to great deference." *Id.* (citing SSR 96-2p, 1996 WL 37188, at *4 (July 2, 1996) ("'In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.'")). "[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

---

[2] Medical opinions for claims filed on or after March 27, 2017 will be evaluated differently. 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017).

treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 37188, at *5); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Generally, more weight is given to the medical opinion of an examining source, such as Dr. Rigby, than to the medical opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). However, "the nature of the examining relationship is but one factor that bears on the weight to be given to a medical source opinion." *Carter v. Colvin,* 27 F. Supp. 3d 1142, 1151 (D. Col. 2014) (citing 20 C.F.R. § 404.1527(c)(1)). "[A]n administrative law judge is not bound by an examining physician's opinion and must evaluate it in the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion." *Ziegler v. Astrue,* 576 F. Supp. 2d 982, 996 (W.D. Wisc. 2008) (citing *Haynes v. Barnhart,* 416 F.3d 621, 630 (7th Cir. 2005)). Furthermore, "[a]n administrative law judge can reject an examining physician's opinion if his reasons for doing so are supported by substantial evidence in the record." *Ziegler,* 576 F. Supp. 2d at 996 (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003)). "When the record contains well supported contradictory evidence, even a treating physician's opinion 'is just one more piece of evidence

for the administrative law judge to weigh.'" *Ziegler,* 576 F. Supp.
2d at 996 (quoting *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th
Cir. 2006)).

"[S]tate agency medical consultants are considered experts
and their opinions may be entitled to greater weight if their
opinions are supported by the evidence." *Hoskins v. Commissioner
of Social Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004) (citing 20
C.F.R. § 404.1527(f)(2)(i)). "Thus, under certain circumstances,
an ALJ may assign greater weight to a state agency consultant's
opinion than to that of a treating or examining source." *Miller v.
Commissioner of Social Sec.,* 811 F.3d 825, 834 (6th Cir. 2016)
(citing Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3; *Blakley v.
Commissioner of Social Sec.,* 581 F.3d 399, 409 (6th Cir. 2009)).
"Such circumstances include where the non-examining source's
opinion 'is based on a review of a complete case record.'" *Miller,*
811 F.3d at 834 (citing Soc. Sec. Rul. 96-6p, 1996 WL 374180, at
*3). "In short, '[a]n ALJ may reject the testimony of an examining,
but non-treating physician, in favor of a nonexamining,
nontreating physician when he gives specific, legitimate reasons
for doing so, and those reasons are supported by substantial record
evidence.'" *Lester v. Chater,* 61 F.3d 821, 831 (9th Cir. 1995)
(citing *Roberts v. Shalala,* 66 F.3d 179, 184 (9th Cir. 1995)).

In the present case, Plaintiff argues, "When the record in
the case is considered in its entirety, the combined effects of

[Plaintiff's] physical and mental impairments, reflect that she could not perform a wide range of even sedentary work on a regular and sustained basis. [DE 11-1, at 9]; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("But the ALJ does not contend, and the record does not suggest, that Gayheart could do any of these activities on *a sustained basis,* which is how the functional limitations of mental impairments are to be assessed."). Plaintiff further argues, "Th[e] ALJ failed to address the entirety of the medical evidence in determining the claimant's severe impairments and [RFC]." *Id.* "[A] denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity, a description of what the claimant 'can and cannot do,' must be reversed." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard v. Comm'r. of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)).

Here, Plaintiff agrees that she suffers from the severe impairments found by the ALJ. [DE 11-1, at 9]. As previously mentioned, the ALJ found the following severe impairments: "obesity, degenerative disc disease, neuropathy, [COPD] with tobacco abuse, coronary artery disease with history of stenting, history right shoulder bursitis, anxiety, and depression." [Tr. 32 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c))]. However, Plaintiff asserts she also "suffers from additional impairments which the ALJ has failed to set forth in his decision." [DE 11-1, at 9].

Specifically, Plaintiff argues, "[Plaintiff's] own testimony establishes that she is disabled based on her inability to sit, stand, or walk for only short periods and her inability to lift any significant weight." *Id.* at 9-10.

Plaintiff posits that "[she] has numerous medical records establishing her on-going treatment for these problems and the ALJ failed to properly address the entirety of the medical evidence in making his assessments." *Id.* at 10. Particularly, Plaintiff claims, "[T]he ALJ erred as a matter of law by failing to properly assess her mental condition and by disregarding the Consultative Exam performed by Dr. William Rigby." *Id.* The ALJ noted Dr. Rigby's findings, which were previously described herein, and gave "mixed weight" to Dr. Rigby's opinions [Tr. 1042-46]. [Tr. 36]. First, "[t]o the extent that Dr. Rigby notes only modest limitations in the claimant's understanding and remembering simple instructions and sustaining attention and concentration, the [ALJ] gives his opinion some weight because it is consistent with clinical observations contained in the associated report and summarized above." [Tr. 36]. Second, "to the extent that Dr. Rigby opines marked limitations in interacting with others and adapting to work, the [ALJ] gives the opinion no more than marginal weight because these assessments appear to be based on the statements of [Plaintiff] rather than Dr. Rigby's clinical observations, which contain essentially normal findings." [Tr. 36]. Additionally, the

ALJ found, "[T]he claimant has had only modest mental health treatment with typical medications and some counseling that lasted only part of 2016." [Tr. 36]. Third, "[t]he GAF score [was] given partial weight [because] it provides only a general description of the claimant's functioning but does not identify specific work-related limitations." [Tr. 36].

Plaintiff's argument appears to be limited to the ALJ's finding that part of Dr. Rigby's opinion [Tr. 1042-46] be given marginal weight. [DE 11-1, at 10]. Specifically, Plaintiff asserts, "The ALJ disregarded Dr. Rigby's findings by determining that Dr. Rigby would only be given marginal weight [] 'because these assessments appear to be based on the statements of the claimant rather than Dr. Rigby's clinical observations, which contain essentially normal findings.'" *Id.* Then, Plaintiff argues, "The ALJ went on to assess applicable restrictions based solely on the non-examining consultative opinions. These opinions were given prior to the record being complete in regard to the Plaintiff's psychological conditions and were prior to the consultative exam given by Dr. Rigby." *Id.* at 10-11.

However, Plaintiff's statement that "the non-examining consultative opinions . . . were prior to the consultative exam by Dr. Rigby" is inaccurate. *Id.* In fact, Dr. Rigby's exam occurred on December 28, 2015, and state agency psychological consultant Dr. Vandivier and state agency medical consultant Dr. Sadler's

opinions, which the ALJ gave preponderant weight, [Tr. 37], were not given until April 25, 2016 and May 18, 2016, respectively. [Tr. 102-03, 106-08, 122-24, 124-26, 104-06, 1042-46]. In giving Drs. Vandivier and Sadler's opinions preponderant weight, the ALJ summarized their findings and found, "[Dr. Vandivier's psychological] opinion is given preponderant weight because it is consistent with the record as a whole showing some treatment but primarily conservative treatment with medication and only a brief period of counseling," and Dr. Sadler's medical opinion is given "preponderant weight . . . because it is consistent with the medical evidence of record showing past treatment for coronary artery disease and COPD but also medical imaging showing only mild abnormalities in the claimant's spine that have been managed with prescription medication." [Tr. 37]. The evidence in the record, previously discussed herein, including VE Hale's testimony [Tr. 61-64], supports the ALJ's reasoning to rely on Drs. Vandivier and Sadler's opinions, [Tr. 104-06, 106-08, 122-24, 124-26], that while Plaintiff had multiple severe impairments, they were able to be managed with medication, and Plaintiff could perform light work with certain physical and mental limitations. *Lester,* 61 F.3d at 831 (citing *Roberts,* 66 F.3d at 184).

Additionally, aside from insisting her own testimony and the medical records in this case support her claims, both of which she only generally cites, Plaintiff provides no evidence to support

her arguments that she "is unable to perform any type of lifting, sitting, standing, or walking for any extending period of time" and unable to perform even light work, therefore rendering her disabled. [DE 11-1, at 11]. As correctly asserted by Defendant, "Plaintiff has not met her burden [to prove she is disabled]." [DE 13, at 10 (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled.")).

Moreover, pursuant to 20 C.F.R. § 404.1527(c)(3), "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Secretary of Health & Human Servs.,* 964 F.2d 524, 528 (6th Cir. 1992) ("the ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'")); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (citing *Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) ("[Treating physicians'] opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence.")). "Generally, the more consistent

a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

Not only was Dr. Rigby's opinion that Plaintiff was markedly limited in interacting with others and adapting to work not supported by any presented evidence other than Plaintiff's own statements, Plaintiff's subsequent mental health treatments did not find her to be as limited as Dr. Rigby suggested. Moreover, as the ALJ correctly observed, Dr. Rigby's own observations did not correspond to Plaintiff's statements. Specifically, other than Dr. Rigby's notes about what Plaintiff reported and Dr. Rigby's observation that "[s]ocial interactions in this session are unremarkable," there is nothing noted in Dr. Rigby's opinion that supports finding Plaintiff to be markedly impaired in interacting with others and adapting to work. [Tr. 1042-46]. After reviewing the whole record, the Court finds there is substantial evidence to support the ALJ's decision to accord Dr. Rigby's opinion [Tr. 1042-46], no more than marginal weight, insofar as it pertains to Dr. Rigby's opinion that Plaintiff was markedly limited in interacting with others and adapting to work, due to his opinion being based solely on Plaintiff's own statements.

## B. WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN

Plaintiff also argues the ALJ failed to properly evaluate his subjective complaints of pain. [DE 11-1, at 11-13]. During the

June 29, 2017, hearing, Plaintiff further testified that while working as a gas station attendant, she operated the cash register, turned on the gas pumps, stocked shelves, lifted or carried up to ten (10) pounds, and cleaned. [Tr. 50-51]. Regarding Plaintiff's work as a hotel housekeeper, she testified that she cleaned rooms, lifted or carried more than twenty (20) pounds, mopped, bent and stooped a lot, stayed on her feet for eight (8) to ten (10) hours a day, pushed a cart, moved furniture that weighed more than twenty (20) pounds, flipped mattresses, and stopped working when she had a heart attack in 2013. [Tr. 51, 57-59]. Plaintiff testified she was able to lift or carry ten (10) pounds and could stand for five (5) minutes before needing to sit down. [Tr. 56]. Plaintiff also testified that her daughter cooks, cleans, does the household chores, and grocery shops, Plaintiff does not attend church, civic groups, or community organizations, and Plaintiff has no hobbies or activities, aside from watching television and reading books. [Tr. 56-57]. Lastly, Plaintiff testified her medication caused her side effects, such as sleepiness, drowsiness, and upset stomach. [Tr. 59].

Plaintiff now argues that the ALJ "failed to properly assess the entirety of the medical evidence including all these additional medical problems which are resulting in additional levels of pain for [Plaintiff]." [DE 11-1, at 13]. In support, Plaintiff claims she has a further decreased tolerance to perform any type of

physical activity, including sitting, standing, or walking as well as psychological issues. *Id.* Plaintiff also blankety states that "[t]here is new information that is based upon the objective medical findings from the medical records, including diagnostic testing, as well as the consultative exam" and her "testimony regarding pain level is uncontradicted in the record." *Id.* Notably, Plaintiff neither states what exact testimony is uncontradicted nor recounts how her testimony is supported by the medical evidence in the record.[3]

Regardless, Defendant disagrees with Plaintiff, arguing, "[S]ubstantial evidence supports the ALJ's finding that the record did not include objective findings or other record evidence that would support Plaintiff's argument that she was subject to disabling symptoms." [DE 13, at 11]. Defendant further contends, "[T]he ALJ's analysis of Plaintiff's symptom complaints is entitled to particular deference from this Court." *Id.* (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). Finally, Defendant contends, "Plaintiff's overall physical and mental health treatment records through the date of the ALJ's decision detract from Plaintiff's claims of disabling symptoms."

---

[3] Plaintiff relies on Social Security Ruling ("SSR") 96-7p, which interpreted SSA Regulation, 20 C.F.R. § 404.1529, in setting forth a two-step process for evaluating subjective complaints. [DE 11-1, at 12]. Plaintiff implies that SSR 96-7p required the ALJ to make a finding on the credibility of Plaintiff's statements. *Id.* at 11-12. However, as correctly noted by Defendant, [DE 13, at 11 n. 5], SSR 96-7p was superseded by SSR 16-3p.

[DE 13, at 12 (citing *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) (unpublished) ("Curler's testimony describing her back pain contrasted starkly with the medical evidence.")).

When evaluating a disability claim for social security purposes, the claimant's pain should be considered. *Kirk v. Sec. of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). Both the SSA and the Sixth Circuit have guidelines for analyzing a claimant's subjective complaints of pain. The SSA regulations are set forth in 20 C.F.R. § 404.1529. The Sixth Circuit's guidelines for evaluating a claimant's assertions of disabling pain are set forth in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The Sixth Circuit laid out these guidelines as follows:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* In *Duncan*, the Sixth Circuit explicitly noted that the test "does not require . . . 'objective evidence of the pain itself.'" *Id.* (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)). However, as the Sixth Circuit clarified in *Felisky*, "[b]oth the SSA standards and the *Duncan* test require objective *medical*

26

*evidence* showing an *underlying medical condition.*" 35 F.3d at 1038–39 (emphasis added).

In the instant case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. [Tr. 35]. However, the ALJ further found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are inconsistent with the medical evidence and other evidence in the record. [Tr. 35]; *see also* 20 C.F.R. § 404.1529(c)(4). The ALJ's finding is supported by substantial evidence in the record.

In particular, the ALJ found Plaintiff's testimony that her right shoulder bursitis made her unable to "lift her arm up high enough to put a shirt over her head" was not supported by the medical evidence, which "does not document any significant treatment for the claimant's right shoulder symptoms since the alleged onset date. [Tr. 36, 680]. The ALJ further noted that while Plaintiff "reported sometimes hearing music, mental status examinations were otherwise well within normal limits," she "maintained average eye contact and had clear speech, and she demonstrated a clear and coherent thought process with no abnormal thought content." [Tr. 36]; *see also* [Tr. 1078-89, 1105-06, 1109-11, 1113-19, 1121-23, 1124-44].

The ALJ's evaluation of Plaintiff's testimony is entitled to deference by this Court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d

532, 542 (6th Cir. 2007). As previously stated, "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155, at *5 (E.D. Tenn. Mar. 30, 2009). So long as the ALJ cited substantial evidence to support his conclusions, this Court may not re-evaluate his determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

When considering all medical evidence and Plaintiff's personal testimony regarding her activities, the ALJ properly evaluated Plaintiff's subjective complaints of pain. Because the ALJ's evaluation is supported by substantial evidence, it is entitled to deference. Thus, remand is unwarranted.

## IV. CONCLUSION

The ALJ's analysis of the evidence, treatment notes, and medical opinions, along with her explanations for discounting Dr. Rigby's opinion [Tr. 1042-46] and giving the state agency consultants' opinions preponderant weight were sufficiently specific to explain the weight given to Dr. Rigby's opinion [Tr. 1042-46]. *See Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 37188, at *5). Even if the Court may have given Dr. Rigby's opinion [Tr. 1042-46] different weight than the ALJ, the ALJ's decision [Tr. 26-45] must be affirmed because it was supported by substantial evidence, and she provided good reasons for according

28

Dr. Rigby's opinion [Tr. 1042-46] no more than marginal weight, insofar as it pertains to Dr. Rigby's opinion that Plaintiff was markedly limited in interacting with others and adapting to work. *Longworth*, 402 F.3d at 595 (citations omitted); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.").

For the foregoing reasons, the Court, having found no legal error on the part of the ALJ and that her decision is supported by substantial evidence,

**IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 11] is **DENIED;**

(2) Defendant's Motion for Summary Judgement [R. 13] is **GRANTED;**

(3) Defendant Commissioner's decision denying Plaintiff's disability claim is **AFFIRMED;**

(4) This matter is **DISMISSED** and **STRICKEN FROM THE COURT'S ACTIVE DOCKET;** and

(5) Judgment in favor of the Defendant will be **ENTERED** separately.

This the 27th day of September, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge